UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY WIMMER, | 1:18-CV-01001-CBK |
| Plaintiff, | |
| | MEMORANDUM AND ORDER |
| vs. | |
| TOP GUN GUIDE SERVICE, INC., JOHN DOES 1-5, | |
| Defendants. | |

This matter is before the Court on defendant Top Gun Guide Service, Inc.'s ("Top Gun") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Doc. 14.

## BACKGROUND

This case arose from injuries that plaintiff Anthony Wimmer sustained while on a hunting trip hosted by defendant Top Gun near Aberdeen, South Dakota in April of 2015. Doc. 1 at 2; Doc. 6 at 1. Mr. Wimmer is a California resident and Top Gun is a Minnesota corporation. Id. On or about April 9, 2015, Mr. Wimmer arrived in Aberdeen, though he did not hunt on that day. Doc. 15 at 5; Doc. 22 at 1. At some point on April 9th, Mr. Wimmer signed a waiver purporting to release Top Gun from liability arising from the hunting trip. Doc. 15 at 5; Doc. 22 at 2. The release form provided, in pertinent part:

> I acknowledge that hunting and fishing entails known and unanticipated risks which could result in physical or emotional injury, paralysis, death, or damage to myself, . . . I understand that such risks are essential qualities of the activity. The risks include, among other things: Accidental shootings, or falls to myself . . . trip or fall accidents to myself . . . medical problems from preexisting conditions . . . to myself . . . I expressly agree and promise to accept and assume all of the risks existing in this activity. My participation in this activity is purely voluntary, and I elect to participate in spite of the risks to others and myself, I fully understand that hunting and fishing is a dangerous activity. I hereby voluntarily release, forever

> discharge, and agree to indemnify and hold harmless [Top Gun] from any and all claims, demands, or causes of action, which are in any way connected with my participation in this activity or my use of [Top Gun] equipment or facilities, including any such claims which allege negligent acts or omissions of [Top gun].

Doc. 17, Ex. D. The parties agree that in his deposition Mr. Wimmer testified that he read the release before signing it and that he did not disagree with anything contained therein. Doc. 15 at 6; Doc. 22 at 2-4. Mr. Wimmer also agreed in his deposition that hunting and fishing is a dangerous activity. Anthony Wimmer Dep. at 41:7-9.

On April 10th, Mr. Wimmer arrived at the hunting site and began setting up hunting decoys. Doc. 15 at 7; Doc. 22 at 5. Shortly after having finished setting up the decoys, Mr. Wimmer was standing in the field where the hunt was to take place when he was struck from behind "by either an [all terrain vehicle (ATV)] or sled." Id. The sled was being towed behind the ATV. Id. The ATV was being operated by a Top Gun guide. Id. The accident occurred between 3:30 a.m. – 4:30 a.m. Doc. 15 at 4. Mr. Wimmer alleges that he sustained severe injuries. Doc. 1 at 2.

Defendant argues that "[b]ecause Mr. Wimmer knowingly, voluntarily, and fairly signed a release that unambiguously covers the injuries that he suffered and that does not contravene public policy," his claims should be dismissed with prejudice. Doc. 15 at 8. Defendant contends that the liability waiver Mr. Wimmer signed before participating in the hunt releases Top Gun from all liability in relation to the ATV accident. Id. In short, Top Gun's argument relies on the liability waiver being found to encompass the harm at issue in this case. Defendant then proceeds to argue that the waiver is valid and its enforcement would not contravene South Dakota's public policy. Id. at 9-11. Defendant argues that releases involving voluntary recreational activities have withstood attacks that they are contrary to South Dakota's public policy many times before; only an attempted waiver of conduct rising to the level of willful negligence or intentional tort would contravene the state's public policy. Id. at 11. Because Mr. Wimmer does not allege willful negligence or any intentional torts, defendant argues that his claims must fail. Id.

2

Plaintiff responds that the harm that befell him was outside the scope of the waiver. Plaintiff argues that he had no meaningful opportunity to negotiate the terms of the waiver and so it must be viewed as an "anticipatory release and contract of adhesion, which should be viewed with a skeptical and critical eye," and any ambiguities should be construed against the drafter. Doc. 20 at 5. Plaintiff argues that the waiver, by its terms, only applies to the limited activities of hunting and fishing. Id. Plaintiff argues that his are not hunting injuries because, at the time of the accident, he had already finished setting up the decoys and was merely standing in the field waiting to be told what he should do next. Id. at 6. Plaintiff urges that such activity should not be considered hunting. Id.

Plaintiff next argues that even if he was hunting at the time of the accident, the release is contrary to South Dakota law as it purports to waive liability for acts of gross negligence and, so, enforcing it would be against South Dakota's public policy. Id. at 7. Plaintiff also argues that provisions of South Dakota law related to motor vehicle liability preclude enforcement of the waiver as against the state's public policy. Id. at 9.

Defendant replies that plaintiff's reading of the waiver is too narrow, the terms of the waiver are broad enough to cover any injury "in any way connected with" the activity of hunting. Doc. 23 at 3. Thus, defendant contends, the terms of the waiver apply to plaintiff's injury whether or not he was actively shooting or pursuing birds at the time of the injury. Id. Defendant further contends that setting up decoys is a part of pursuing birds, which is within the definition of hunting adopted in South Dakota's laws. Id. at 4.

Defendant also argues that enforcing the release against plaintiff would not violate South Dakota public policy because plaintiff only claims ordinary negligence, liability for which may be waived. Id. at 5. Defendant argues that plaintiff has produced no evidence that defendant's agent operated the ATV in a reckless or willfully negligent manner. Id. at 6-7. Defendant argues that there was no disparity in bargaining power that would warrant this waiver being viewed as a contract of adhesion. Id. at 7. Finally, defendant argues that the waiver does not allow Top Gun to circumvent South Dakota's motor

3

vehicle insurance laws, as plaintiff has claimed, and enforcing the waiver would not be contrary to the public policy those laws espouse. Id. at 8.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Knutson v. Schwan's Home Service, Inc., 711 F.3d 911, 913 (8th Cir. 2013). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. That is, to make summary judgment inappropriate, there must be a factual dispute concerning facts the existence or nonexistence of which would "be outcome determinative under [the] prevailing [substantive] law." Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1034 (8th Cir. 2005).

Thus, in accordance with Rule 56(c), the party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the burden shifts to the non-movant to present affirmative evidence, beyond the pleadings, showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986). To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith

4

Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-movant must be able to "show there is sufficient evidence to support a jury verdict in [its] favor." Nat'l Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). After this exercise, "we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." Northport Health Servs. of Arkansas, LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019).

## DISCUSSION

"Because this is a diversity action, we apply the substantive law of the forum state." Vandewarker v. Cont'l Res., Inc., 917 F.3d 626, 629 (8th Cir. 2019), *reh'g denied* (Apr. 10, 2019) (*citing* N. Oil & Gas, Inc. v. Moen, 808 F.3d 373, 376 (8th Cir. 2015). Under South Dakota law, a waiver of liability is contractual in nature and is governed by contract law. Johnson v. Rapid City Softball Ass'n, 514 N.W.2d 693, 697 (S.D. 1994). When interpreting a contract, "[t]he goal . . . is to see that the mutual intent of the parties is carried into effect." Nelson v. Schellpfeffer, 656 N.W.2d 740, 743 (S.D. 2003). Courts look to the language of the contract to determine the intent of the parties, Roseth v. Roseth, 829 N.W.2d 136, 142 (S.D. 2013), and afford contractual terms their "plain and ordinary meaning," Bunkers v. Jacobson, 653 N.W.2d 732, 738 (S.D. 2002) (citation and quotation marks omitted). "When the meaning of contractual language is plain and unambiguous, construction is not necessary" because the "intent of the parties can be derived from within the four corners of the contract." Roseth, 829 N.W.2d at 142 (citation omitted); *see also* Nelson, 656 N.W.2d at 743 ("When the words of a contract are clear and explicit and lead to no absurd consequences, the search for the parties' common intent is at an end.").

When a contract is found to be ambiguous, however, "parol evidence is admissible to explain the contract but inadmissible to vary or add terms to the contract." Couch v. Lyon, No. CIV. 12-3029-RAL, 2013 WL 5942607, at *4 (D.S.D. Nov. 5, 2013) (*citing* Roseth, 829 N.W.2d at 142.). A contract is not rendered ambiguous merely because the parties now disagree as to their intent at the time of contracting. Roseth, 829 N.W.2d at 142. "Instead, 'a contract is ambiguous only when it is capable of more than one

5

meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" Id. (*quoting* Vander Heide v. Boke Ranch, Inc., 736 N.W.2d 824, 836 (S.D. 2007)).

The release at issue in the instant case is not ambiguous. Although it must be interpreted and read in a common sense manner. The release, by its terms, covers "all claims, demands, or causes of action, which are in any way connected with [plaintiff's] participation in this activity or [plaintiff's] use of [Top Gun] equipment..." Doc. 17, Ex. D. Furthermore, plaintiff has not challenged the validity of the release or any of its terms; thus, the Court will apply the release and construe it by its terms, using common sense methods.

Defendant argues that, at the time of injury, plaintiff was in the process of pursuing birds, that is, plaintiff was on a hunting trip, in a hunting field regardless of whether he was actively shooting or preparing to shoot at the time. Because plaintiff was pursuing birds at the time he was injured, defendant argues that his injury is "connected with" the activity of hunting. Plaintiff argues that he was done setting up decoys at the time he was injured and, as a result, he was not pursuing birds at the time of the harm— he was merely a man standing in a field. As a matter of law, plaintiff could not have legally been pursuing waterfowl because the accident happened long before legal shooting time. Thus, both parties focused their arguments on what the plaintiff was doing at the time of the accident.

This accident could not, as a matter of law, have been a part of legal hunting. In South Dakota, a hunter may not shoot waterfowl until one half hour before sunrise. At the time of the accident, all preparations for hunting had been completed. The parties were in a waiting period. Instead, plaintiff was struck by a motor vehicle. The fact that plaintiff is claimed to be hunting at the time he was struck by the ATV is irrelevant because being struck by an ATV is not a harm arising out of hunting, especially long before sunrise. In addition, the release makes no mention of a motor vehicle accident.

The language in the release, "in any way connected with [plaintiff's] participation in this activity," is so broad that it necessitates an exercise in line drawing. At some

6

point, it would be absurd to find an activity that, while distantly connected with plaintiff's participation in the hunt, is covered by a waiver of liability for a hunting trip. For example, if plaintiff had been injured when the car in which he was being transported from the hotel to the hunting grounds was involved in an accident, would any negligence from that activity be covered by the release? It is certainly an activity in *some* way connected with plaintiff's participation in the hunt, as the party was on the way to the hunting grounds. But to say that a waiver of liability for a hunting trip covered negligence related to a car trip from the hotel to the hunting grounds would be to stretch the bounds of what general, catch-all provisions of a contract can accomplish.

That is not to say that general contract provisions are not enforceable. Indeed, South Dakota case law has upheld the efficacy of broad waivers of liability. There are generally two lines of reasoning that permeate South Dakota case law concerning releases from liability.

> First, the more inherently dangerous or risky the recreational activity, the more likely that an anticipatory release will be held valid. That is, individuals who engage in activities like mountain climbing, race car driving, parachute jumping, and the like, are more likely to be held to have an understanding of the risky nature of their chosen activity.

Johnson, 514 N.W.2d at 700 (Wuest, J. concurring) (internal citations omitted). Second, releases are deemed more acceptable when they are written on a separate sheet of paper. Id. It is the first line of reasoning that is most relevant to the instant analysis.[1]

The first line of reasoning recognizes that individuals who voluntarily engage in a particularly dangerous activity for recreational purposes must accept a certain amount of risk that is inherent in said activity. That is, when an individual chooses to go skydiving, signs a release with a vendor providing such services, and is injured while hurtling to the earth, he cannot then sue in contravention of that release. Hunting is likewise a dangerous activity; the hunter voluntarily exposes himself to all the dangers of the firearms enthusiast as well as those of the outdoorsman. It is agreed that the release in

---

[1] The release in this case was written on a separate piece of paper. See Doc. 17, Ex. D.

7

this case covers liability arising out plaintiff's participation in the activity of hunting. However, plaintiff's participation in the hunt did not cause his injury. Defendant asserts that setting up decoys is a means of pursuing birds—hunting—but, while that may be true, neither the decoys themselves, nor any part of the process of placing them, caused plaintiff's injuries.

Each case the Supreme Court of South Dakota has considered relating to the application of a release from liability has involved harm that arose out of the activity for which liability was waived. In Johnson, the signed release concerned the plaintiff's participation in a softball league. She subsequently "injured her right ankle sliding into third base during a softball game." Johnson, 514 N.W.2d at 694. In Holzer, the signed release concerned the plaintiff's presence in the "pit" area of a race track; he was subsequently hit by a tire that flew off one of the racecars and over protective barricades. Holzer, 610 N.W.2d at 789-91. In Lee v. Beauchene, the signed release covered the plaintiff's participation in an automobile race; subsequently his "car struck a hole [in the track] that he estimated was one to one and one-half feet deep. The car flipped." Lee v. Beauchene, 337 N.W.2d 827, 828 (S.D. 1983). In each of the foregoing cases, the plaintiff's injury was caused by his or her participation in the activity for which liability was waived. That is, the injury arose from the activity itself. If that were not the case, however, those cases might have turned out quite differently. For instance, if the plaintiff in Holzer had been accidentally shot while working in the pit area, the question of whether he had waived the track's liability for such harm would have been a different question.

In the instant case, plaintiff's injury did not arise from his participation in the hunt. He was not accidentally shot by a fellow hunter, he did not strain his back while placing a decoy, nor did he twist his ankle while standing around waiting to be told what to do next. Instead, plaintiff was struck from behind by a motor vehicle at a time before legal hunting could commence, something separate and apart from his participation in the hunt. Thus, while liability was effectively waived for injury arising out of the activities of hunting or fishing, there was no release for the harm that befell plaintiff. The ATV was

8

being driven by Top Gun staff, presumably to transport the decoys from the cars to the hunting grounds. At some point in that process, the employee struck plaintiff with the ATV. While such work is in some way connected with the hunt, it is not connected with plaintiff's participation in the hunt in any way beyond plaintiff's mere presence on the hunting grounds. When plaintiff signed a release for harm arising out of hunting or fishing, he was simply not there giving up his right to sue for harm arising out of a motor vehicle accident, or any other activity when he could not have been legally hunting.

As the Court finds that the release does not apply to the harm at issue in this case, the parties' arguments concerning South Dakota's insurance law and public policy concerning releases of liability in claims for gross negligence, respectively, will not be addressed.

IT IS ORDERED that defendant Top Gun's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, Doc. 14, is hereby DENIED.

DATED this 26th day of October, 2019.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge